# EXHIBIT B

Electronically Filed
4/6/2018 5:36 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
Tel:  (702) 853-5490
Fax:  (702) 227-1975

Jason M. Kerr (NSB 7773)
Ronald F. Price (Utah Bar No. 5535)
*Pro Hac Vice to be submitted*
**PRICE PARKINSON & KERR, PLLC**
5742 West Harold Gatty Drive
Salt Lake City, UT 84116
Telephone:  (801) 530-2900

*Attorneys for Plaintiff*

### EIGHTH JUDICIAL DISTRICT COURT

### CLARK COUNTY, NEVADA

BARNA CAPITAL GROUP LTD, a Cyprus
Entity, derivatively on behalf of CHINA AUTO
LOGISTICS, INC., a Nevada Corporation

    Plaintiff,

  v.

TONG SHIPING, an Individual; CHENG
WEIHONG, an Individual; HOWARD
BARTH, an Individual; MENG DONG, an
Individual; LV FUQUI, an Individual; YU
JUN, an Individual; BAI SHAOHUA, an
Individual; XINWEI WANG, an Individual;
LILI YANG, an Individual; LISI GROUP
(HOLDINGS) LTD, a Bermuda Limited
Liability Company; MEGA CONVENTION
GROUP LIMITED, a British Virgin Islands
Limited Liability Company; TIANJIN
BINHAI CAR CITY, LTD. a company
established in the Peoples Republic of China;
MIGHTY MARK INVESTMENTS, a British
Virgin Islands Corporation; TIANJIN
CALISTAR AUTOMALL OPERATION
MANAGEMENT CO., LTD. A limited
company established in the Peoples Republic
of China CALISTAR AUTOMOBILE SALES

Case No.:  Department 8

Dept. No.:  Department 8

**VERIFIED SHAREDHOLDER
DERIVATIVE COMPLAINT**

*Exempt from Arbitration*

- 1 -

AND SERVICES, LTD. A limited company )
established in the Peoples Republic of China; )
TIANJIN CALISTAR INDUSTRIAL )
COMPANY, LTD., a limited company )
established in the Peoples Republic of China; )
WORLD VAST INTERNATIONAL )
ENTERPRISE LIMITED, a Hong Kong )
Limited Liability Company; TIANJIN BOHAI )
CAR SUPPLY CHAIN MANAGEMENT CO. )
LTD., a limited company established in the )
Peoples Republic of China; )
)
                    Defendants. )
)
And )
)
CHINA AUTO LOGISTICS INC., a Nevada )
Corporation, nominal Defendant. )

## VERIFIED SHAREDHOLDER DERIVATIVE COMPLAINT

Plaintiff **BARNA CAPITAL GROUP LTD,** a Cyprus company, by its attorneys, submit

this Verified Shareholder Derivative Complaint (the "Complaint") on behalf of the nominal plaintiff

**CHINA AUTO LOGISTICS, INC.,** ("CALI") a Nevada Corporation, against the defendants

named herein.

### I.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action.  Plaintiff is a citizen of Cyprus with

offices in Cyprus and Russia.  Defendants are citizens of Nevada, the British Virgin Islands, the

Peoples Republic of China, Hong Kong, Canada and Bermuda.

2.      This Court has jurisdiction over each defendant named herein because each

defendant is either a corporation that conducts business in and maintains operations in Nevada, or is

an individual who has sufficient minimum contacts with Nevada so as to render the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper in this Court because: (i) nominal party CALI is a Nevada corporation and maintains an office in Clark County; (ii) one or more defendants either resides in or maintains executive offices in this district; and (iii) defendants have received substantial compensation in Clark County by doing business here and engaging in numerous activities that had an effect in this District.

## II.

## SUBSTANTIVE ALLEGATIONS

4.      This is a shareholder derivative action on behalf of nominal party CALI, a Nevada Corporation.  In its public filings with the SEC and in other public representations, CALI claims to be in the business of selling "imported automobiles...financing services related to imported automobiles, and...other services including automobile information websites and advertising services, and logistics services related to the automobile importing process and other automobile value added services, such as assistance with customs clearance, storage and nationwide delivery services" in the Peoples Republic of China.  Essentially, CALI claims to be engaged in "parallel importation" of automobiles into China.  Sometimes this business is referred to as "gray market" automobile importation.  CALI purports to purchase luxury automobiles in countries outside of China, primarily in North America, and exports those automobiles to China, where it marks up and purports to sell those automobiles to Chinese consumers.  Because of market price differentials, luxury automobiles often sell for more than two or three times the cost to purchase the same automobiles in North America.  CALI reports over $400,000,000.00 per year in revenue, but with a very low profit margin.  Although CALI claimed that it earned a very small profit in 2016, it usually has reported losses.  CALI reports an operating margin of around 0.4%, while its competitors report operating margins of around 12%.

5.     The individual defendants are the current members of CALI's Board of Directors ("Board"), and one former member of the Board, and former CALI Vice President, Cheng Weihong. Ms. Weihong is the wife of the President, CEO and CALI board member Tong Shiping.  Mr. Tong and Ms. Wiehong own, through entities they control, a majority of the shares of CALI and control both the Board and CALI.  As will be described in greater detail below, Cheng Weihong, for her own benefit and the benefit of her husband, Tong Shiping, and with the acquiescence, approval and assistance of the Board, fraudulently diverted millions of dollars of corporate opportunities and profits to the entity defendants and ultimately to Cheng Weihong and Tong Shiping.   These corporate opportunities and profits rightfully belonged to CALI.  This action arises from defendants' actions.

6.     While both a member of the Board and the Vice President of CALI, Cheng Weihong, in violation of her duties and obligations, also secretly owned and operated a web of interrelated companies that were and are "principally engaged in...the Parallel Import and trading of Parallel Imported Cars" in direct competition with CALI.  Cheng Weihong's actions were taken with the full consent and for the benefit of her husband Tong Shiping.  Cheng Wiehong's businesses include defendants Mighty Mark Investments Limited, Mega Convention Group Limited, World Vast International Enterprise Limited, Tianjin Calistar Automall Operation Management Co. LTD. ("Calistar Automall"), Tianjin Calistar Industrial Co. LTC, and Calistar Automotive Sales and Services Co. LTD.  These entities were also controlled by Cheng Weihong's husband, member of the Board, and president and CEO of CALI, Tong Shiping.   These entities were created to fraudulently siphon profits from CALI to the detriment of CALI and CALI's shareholders and for the benefit of defendants Tong Shiping and Cheng Weihong.

7.     On or about June 2, 2016, defendant Calistar Automall, which is owned and controlled by defendant Cheng Weihong, entered into a "Strategic Cooperative Agreement" with

defendant Tianjin Binhai International Car City Co., LTD. ("Binhai Car City"). Binhai Car City is owned and controlled by Cheng Weihong's son-in-law and nephew. Its board of directors includes defendant Yang Lili, who also sits on the board of directors of CALI. Binhai Car City shares its business address with CALI. According to public filings, Binhai Car City's business is renting and providing exhibition space for parallel car importers in Tianjin, China.

8. Despite the fact that Binhai Car City's business is exhibition space rental, Binhai Car City "Strategic Cooperative Agreement" with Calistar Automall requires Binhai Car City to sell parallel imported cars to Calistar Automall.

9. However, Binhai Car City has no ability to import cars into China. Therefore it must purchase cars from a parallel importer. Binhai Car City purchases automobiles imported by CALI. Binhai Car City then resells the CALI automobiles to entities owned and controlled by Cheng Weihong. Binhai Car City purchases automobiles from CALI at below market prices and then resells those automobiles at below market prices to entities owned and controlled by Cheng Weihong for the benefit Cheng Weihong and Tong Shiping and to the damage and detriment of CALI and its shareholders.

10. On September 29, 2016, Binhai Car City entered into a legally binding undertaking wherein it stated "that since January 2015 it has not been and will not be, engaged in business similar to" Calistar Automall's business of "the sale and trading of Parallel Imported Cars." In other words, Binhai Car City, as of at least January 2015, sold parallel imported vehicles only to entities owned and controlled by Cheng Weihong.

11. The terms of the "Strategic Cooperative Agreement" are unusually favorable to Calistar Automall. Among other things, the Strategic Cooperative Agreement requires Binhai Car City to sell automobiles to Calistar Automall at the lowest price available from third parties in the market, regardless of the price Binhai Car City paid for that automobile and regardless whether that

sale would result in a loss or not to Binhai Car City.   At the same time, Calistar Automall guarantees to cover any losses to Binhai Car City as a result of a sale price that was too low to cover Binhai Car City's costs.   In other words, the Strategic Cooperative Agreement was designed so that Binhai Car City neither loses nor makes any money on the sale of automobiles to Calistar Automall because once transfer payments are taken into account Binhai Car City sells all cars to its only customer, Calistar Automall, at its cost.

12.     In summary, CALI sells automobiles to Binhai Car City at below market prices and, according to its SEC filings, at a 0.4% margin.   Binhai Car City then resells those automobiles to Calistar Automall at a price and on terms that guarantee Binhai Car City makes no money.   Calistar Automall is now free to sell the automobile at market prices, earning a high profit margin.   These profits rightly belong to CALI and its shareholders, but instead are diverted to Calistar Automall to benefit Tong Shiping and Cheng Weihong.   The result is that CALI has the lowest profit margin among its competitors in the parallel importation market in China, despite the fact that, according to its CEO, Tong Shiping, CALI is by far the largest parallel importer in China with hundreds of millions of dollars in revenue and should therefore enjoy significant economies of scale and market power over its competitors.

13.     Calistar Automall began operations sometime in 2014 and grew very quickly.   In 2014 its revenues were approximately $1,000,000.   The following year, 2015, Calistar Automall reported revenues of $101,536,262.   Calister Automall was also very profitable, reporting approximately $4,900,000 in profits in 2015, the same year CALI reported a $9,500,000 loss.

14.     On September 30, 2016, within three months of entering the "Strategic Cooperative Agreement" with Binhai Car City, defendant Cheng Weihong, through defendant Mighty Mark Investments Limited, which she owned and controlled, sold all of the shares in a group of companies that includes World Vast International Enterprise Limited, Calistar Automall Operations

Management Co., LTD., Tianjin Calistar Industrial Co., and Calistar Automotive Sales and Services Co. LTD. (the "Purchased Entities") to defendant LISI Group (Holdings) Limited ("LISI"). According to the purchase documents, it appears that the only significant asset of any of the Purchased Entities was the Strategic Cooperative Agreement between Calistar Automall and Binhai Car City.  But for the illegal and fraudulent agreement between CALI, Binhai Car City, and Calistar Automall, Calistar Automall would have no revenues.  In other words, but for the illegal and fraudulent scheme wherein CALI sells parallel imported automobiles to Binhai Car City at below market prices, which then sells them to Calistar Automall with zero mark-up, Calistar Automall would have no revenues, profits, or business to sell to LISI.

15.     In the sales documents, the Purchased Entities and Cheng Weihong also claimed to have an agreement to purchase parallel imported automobiles from Tianjin Bohai Car Supply Chain Management Co. LTD.  Upon information and belief, said company either does not exist, or is owned and controlled by individuals that are under the direction and control of Cheng Weihong, Tong Shiping, or one or more of the other defendants.  Investigation has failed to reveal any company under the aforementioned name that has ever exported a vehicle from North America to China.

16.     LISI purchased the shares in the Purchased Entities by payment of LISI stock to entities owned and controlled by Cheng Weihong.  The LISI stock has directly benefitted Cheng Weihong and Tong Shiping.  The LISI stock was to be paid out if certain revenue targets were met. The targets were met, and the value of the stock held directly and for the benefit of Cheng Weihong and Tong Shiping now exceeds $400,000,000.  Entities controlled and benefitting Cheng Weihong and Tong Shiping are now the single largest shareholders of LISI and control the entity.

17.     In addition to the compensation listed in paragraph 17, above, Cheng Weihong and Tong Shiping negotiated a board position for Tong Xin, defendant Tong Shiping's nephew.

- 7 -

18.     As of September 2017, CALI continued to report lackluster sales and operating margins of approximately 0.4%.  LISI on the other hand has been much more successful.  Its revenues are comparable to CALI's, but LISI's operating margins are over 1,000% higher – approximately 12%.  In addition, LISI reported sales of approximately $200,000,000 in its first six months after its purchase of Calistar Automall, or almost exactly the same revenue as CALI, but at much higher margins.  But for the fraudulent and illegal activities of the defendants, the operating margins and profits of LISI, which have directly benefitted the defendants, would have benefited CALI and its shareholders.

19.     Although CALI purports to be in the business of importing and selling luxury automobiles to consumers in China, in reality CALI sells few, if any, automobiles to consumers.

20.     For example, a search of the internet reveals no website or other method through which consumers in China can purchase automobiles from CALI.

21.     Additionally, on information and belief, there is no physical location in China such as a dealership, store, building or other facility located in China where consumers can go to, or through which they can, purchase automobiles.

22.     Consumers cannot purchase automobiles at CALI's offices in China.

23.     Consumers in China cannot contact CALI via telephone to purchase an automobile.

24.     Consumers in China cannot purchase automobiles from CALI via the internet.

25.     CALI's employees in its offices in China have been instructed to inform persons who call CALI's offices that they cannot answer any questions about CALI's business operations.

26.     In short, on information and belief, consumers cannot and do not purchase automobiles from CALI in China, and CALI is not in fact engaged in the business of selling automobiles to consumers in China.

27.     The wrongs complained of herein began at least as early as 2014 and continue through today.  Specifically, during the calendar year 2017, CALI sold automobiles valued at more than $100,000,000 to LISI through the Purchased Entities and Binhai Car City in a scheme to defraud the shareholders of CALI and to divert profits to the defendants.  In 2018, the fraudulent scheme has continued and CALI continues to sell automobiles to LISI at less than market value, as set forth above, which LISI then resells at market value.  The effect of these acts is to deprive CALI and its shareholders of profits, which are being realized by LISI and its shareholders including the defendants in this matter.

**III.**

**THE PARTIES**

28.     Plaintiff Barna Capital Group ("Barna") was a shareholder of CALI during time of the continuing wrongs complained of herein and remains a shareholder. Plaintiff currently owns approximately 20% of the outstanding CALI shares and has continuously been a shareholder since August 7, 2017.  Plaintiff is incorporated in Cyprus and maintains offices in Cyprus and Russia.

29.     Nominal party CALI claims it is in the business of selling "imported automobiles...financing services related to imported automobiles, and...other services including automobile information websites and advertising services, and logistics services related to the automobile importing process and other automobile value added services, such as assistance with customs clearance, storage and nationwide delivery services" in the Peoples Republic of China. Essentially, CALI's business is "parallel importation" of automobiles into China.  Sometimes this business is referred to as "gray market" automobile importation.   CALI purchases luxury automobiles in countries outside of China, primarily in North America, and exports those automobiles to China, where it claims to mark up and sell those automobiles to Chinese consumers. Because of market price differentials, luxury automobiles often sell for more than two or three times

the cost to purchase the same automobiles in North America.  CALI has over $400,000,000.00 per year in revenue, but with a very low profit margin.  CALI claimed that it earned a very small profit in 2016, and usually has reported losses.  CALI reports an operating margin of around 0.4%, while its competitors report operating margins of around 12%.

30.     Defendant Tong Shiping, a resident of the Peoples Republic of China, is President, CEO and Chairman of the Board of CALI during all relevant times herein.  Tong Shiping, along with his wife Cheng Weihong, is the beneficial owner of a majority of the shares of CALI and therefore controls the Board.  Tong Shiping purposefully directed CALI to enter into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Tong Shiping also knew that Binhai Car City would sell those same automobiles at below market prices to defendants Calistar Automall and later to LISI, a putative competitor of CALI.  Tong Shiping did so knowing that by entering into the aforementioned transactions, Tong Shiping was acting in his own self interest and in a manner that would benefit himself and his wife Cheng Weihong and LISI and harm the interests of CALI and CALI's shareholders.

31.     Defendant Cheng Weihong, is a resident of the Peoples Republic of China, was at all relevant times until December 20, 2017 a Vice President of CALI and a board member of CALI. Cheng Weihong is married to Tong Shiping. Cheng Weihong, along with Tong Shiping, is the beneficial owner of a majority of the shares of CALI and therefore controls the Board.  Cheng Weihong purposefully directed CALI to enter into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Cheng Weihong also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Cheng Weihong did so knowing that by entering into the aforementioned transactions, Cheng Weihong was acting in her own self interest

1  and in a manner that would benefit herself and her husband and LISI and harmed the interests of

2  CALI and CALI's shareholders.

3     32.    Defendant Lili Yang, a resident of the Peoples Republic of China, was at all relevant

4  a board member of CALI.  Lili Yang also is a board member of Binhai Car City.  Lili Yang

5  purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai

6  Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Lili Yang

7  also knew that Binhai Car City would sell those same automobiles at below market prices to

8  Calistar Automall and later to LISI, a putative competitor of CALI.  Lili Yang did so knowing that

9  by entering into the aforementioned transactions, CALI was acting in the interest of LISI and

10  harmed the interests of CALI and CALI's shareholders.

11

12     33.    Defendant Howard Barth, a resident of Canada, was a board member of CALI.

13  Howard Barth purposefully directed or acquiesced to CALI entering into contracts to sell

14  automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its

15  shareholders.  Howard Barth also knew that Binhai Car City would sell those same automobiles at

16  below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Howard

17  Barth did so knowing that by entering into the aforementioned transactions, CALI was acting in the

18  interest of LISI and harmed the interests of CALI and CALI's shareholders.

19

20     34.    Defendant Meng Dong, a resident of the Peoples Republic of China, was at all

21  relevant times a board member of CALI.  Meng Dong purposefully directed or acquiesced to CALI

22  entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were

23  unfavorable to CALI and its shareholders.  Meng Dong also knew that Binhai Car City would sell

24  those same automobiles at below market prices to Calistar Automall and later to LISI, a putative

25  competitor of CALI.   Meng Dong did so knowing that by entering into the aforementioned

26

27

28

1   transactions, CALI was acting in the interest of LISI and harmed the interests of CALI and CALI's

2   shareholders.

3       35.     Defendant LV Fuqui, a resident of the Peoples Republic of China, was at all relevant

4   times a board member of CALI.  LV Fuqui purposefully directed or acquiesced to CALI entering

5   into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable

6   to CALI and its shareholders.  LV Fuqui also knew that Binhai Car City would sell those same

7   automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of

8   CALI.  LV Fuqui did so knowing that by entering into the aforementioned transactions, CALI was

9   acting in the interest of LISI and harmed the interests of CALI and CALI's shareholders.

10

11      36.     Defendant Yu Jun, a resident of the Peoples Republic of China, was at all relevant

12  times a board member of CALI.  Yu Jun purposefully directed or acquiesced to CALI entering into

13  contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to

14  CALI and its shareholders.  Yu Jun also knew that Binhai Car City would sell those same

15  automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of

16  CALI.  Yu Jun did so knowing that by entering into the aforementioned transactions, CALI was

17  acting in the interest of LISI and harmed the interests of CALI and CALI's shareholders.

18

19      37.     Defendant Bai Shaohua, a resident of the Peoples Republic of China, was at all

20  relevant times a board member of CALI.  Bai Shaohua purposefully directed or acquiesced to CALI

21  entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were

22  unfavorable to CALI and its shareholders.  Bai Shaohua also knew that Binhai Car City would sell

23  those same automobiles at below market prices to Calistar Automall and later to LISI, a putative

24  competitor of CALI.  Bai Shaohua did so knowing that by entering into the aforementioned

25  transactions, CALI was acting in the interest of LISI and harmed the interests of CALI and CALI's

26  shareholders.

27

28

38.     Defendant Xinwei Wang, a resident of the Peoples Republic of China, was at all relevant times a board member of CALI.  Xinwei Wang purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Xinwei Wang also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.   Xinwei Wang did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harmed the interests of CALI and CALI's shareholders.

39.     Defendant LISI is a Hong Kong corporation, a controlling interest of which is owned and controlled by defendants Cheng Weidong and Tong Shiping.   Defendants Cheng Weidong and Tong Shiping use LISI to divert revenues and profits from CALI to the detriment of CALI and its shareholders as set forth in greater detail above.

40.     Defendant Mega Convention Group Limited is a British Virgin Islands Limited Liability Company, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

41.     Defendant Tianjin Binhai Car City, LTD. is a company established in the Peoples Republic of China is utilized and controlled by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

42.     Defendant Tianjin Bohai Car Supply Chain Management Co. LTD., is a company established in the Peoples Republic of China is utilized and controlled by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

43.     Defendant Mighty Mark Investments is a British Virgin Islands Limited Liability Company, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

44.     Defendant Tianjin Calistar Automall Operation Management Co., LTD is a limited liability company established in the Peoples Republic of China, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

45.     Defendant Calistar Automobile Sales and Services, LTD is a limited liability company established in the Peoples Republic of China, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

46.     Defendant Tianjin Calistar Industrial Company, LTD. is a limited liability company established in the Peoples Republic of China, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

47.     Defendant World Vast International Enterprise Limited is a Hong Kong company, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

/ / /

/ / /

## IV.

### THE FIDUCIARY DUTIES OF CALI'S DIRECTORS AND OFFICERS

48.     As directors, officers, and fiduciaries of CALI, and because of their ability to control the business and corporate affairs of CALI, the individual defendants owed fiduciary duties of trust, due care, candor, good faith and loyalty to the CALI and its shareholders. These individual defendants were required to use their utmost ability to control and manage CALI in a fair, just, honest, and equitable manner. They are prohibited from engaging in self-dealing as well as unlawful corporate conduct, such as violations of the laws, rules and regulations applicable to CALI and its business.

**Specific Audit Committee Duties**

49.     In addition to their general duties, the individual defendants who serve on CALI's Audit Committee owe and owed specific duties as members of the Audit Committee.  In particular, these Audit Committee defendants were responsible for overseeing the Company's compliance with legal and regulatory requirements. The Audit Committee defendants were also required to review the adequacy of the Company's internal controls and its procedures designed to ensure compliance with laws and regulations and any special audit steps adopted in light of material control deficiencies. Finally, the Audit Committee defendants had the general duty to review with management and the independent registered public accounting firm any reports or disclosures submitted by management to the Audit Committee, including management's assessment of the effectiveness of the CALI's internal control over financial reporting.

**Control, Access, and Authority**

50.     The individual defendants, because of their positions of control and authority as officers and/or directors of CALI, were able to and did, directly and/or indirectly, exercise control

over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

51.     Because of their advisory, executive, managerial, and directorial positions with CALI, each of the individual defendants had access to adverse, non-public information about the financial condition and operations of CALI.

52.     At all times relevant hereto, each of the individual defendants and the entity defendants was the agent of each of the other individual defendants and of CALI, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

53.     To discharge their duties, the officers and directors of CALI were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of CALI were required to, among other things:

(a)     ensure that CALI complied with its legal obligations and requirements;

(b)     conduct the affairs of CALI in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business legally possible;

(c)     remain informed as to how CALI conducted its operations, and upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices; and

(d)     ensure that CALI was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breach of Duties**

54.     Each individual defendant, by virtue of his or her position as a officer and/or director, owed to CALI and to its shareholders the fiduciary duty of loyalty and good faith and the

exercise of due care and diligence in the management and administration of the affairs of CALI, as well as in the use and preservation of its property and assets.   The conduct of the individual defendants complained of herein involves a knowing and culpable violation of their obligations as officers and/or directors of CALI, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company. The conduct of the individual defendants who were also officers and/or directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised all of the Board.

55.    The individual defendants breached their duties of loyalty and good faith by operating CALI without implementing and maintaining internal controls in compliance with applicable law and regulations and by failing to stop and/or encouraging the fraudulent and illegal contracts described herein.

**V.**

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

56.    In committing the wrongful acts alleged herein, the individual defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design while utilizing the entity defendants in their schemes and actions. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the individual defendants further aided and abetted and/or assisted each other in breaching their respective duties.

57.    During all times relevant hereto, the individual defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal the fact that the individual defendants caused CALI and the entity defendants to systematically violate the individual defendants' duties as officers and directors to CALI; (ii) deceive the investing public,

including shareholders of CALI, regarding the individual defendants' management of CALI's operations; (iii) enhance the individual defendants' executive and directorial positions at CALI and the profits, power, and prestige that the individual defendants enjoyed as a result of holding these positions and (iv) personally profited and benefitted from opportunities that rightfully belonged to CALI.  In furtherance of this plan, conspiracy, and course of conduct, the individual defendants collectively and individually took the actions set forth herein.

58.   The individual defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the individual defendants committed the acts set forth herein.

59.   The purpose and effect of the individual defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

60.   The individual defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing CALI to purposefully or recklessly violate applicable laws. Because the actions described herein occurred under the authority of the Board, each of the individual defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

61.   Each of the individual defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each individual defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

/ / /

/ / /

# VI.

## DAMAGES

62.     As a result of diverting corporate opportunity and profits from CALI to LISI as set forth above, defendants Tong Shiping and Cheng Weihong directly and personally benefitted by obtaining shares in LISI currently valued at over $400,000,000.

63.     In addition, the stock price of CALI has been artificially depressed as a result of the scheme to divert profits to LISI in an amount to be proven at trial.

64.     In addition, CALI has incurred costs and expenses. Such expenditures include, but are not limited to expenses resulting from increased legal fees, costs incurred from the compensation and benefits paid to individual defendants who breached their fiduciary duties to the Company, damages to CALI's business, goodwill, and reputation with its business partners, and shareholders have been gravely impaired. For at least the foreseeable future, CALI will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that CALI's ability to raise equity capital or debt on favorable terms in the future is now impaired.

# VII.

## DERIVATIVE AND DEMAND REFUSAL

65.     Plaintiff has made demands on CALI that CALI allow Plaintiff to inspect, *inter alia*, CALI's (a) books of account and financial records, (b) press releases or public communications regarding any business relationship with the other corporate defendants, (c) internal communications relating to Cheng Weihong's business dealings with any of the other corporate defendants, (d) invoices to, and contracts with, defendants Tianjin Binhai Car City, Ltd., (e) all invoices to any of CALI's customers over the past three years, (f) board actions, resolutions or

minutes related to Binhai Car City and/or LISI Group (Holding) Limited, and (g) disclosures of conflicts of interests related to members of the board of directors.

66.     CALI has refused to allow Plaintiff to review the documents referenced in paragraph 65.

67.     Plaintiff has made demand on CALI and the individual defendants to cease their wrongful and illegal conduct, and for the individual defendants to disgorge to CALI their ill-gotten gains.  CALI and the individual defendants have refused to cease their wrongful conduct, and the individual defendants have refused to disgorge to CALI their ill-gotten gains, which gains rightfully belong to CALI.

68.     Specifically, on March 20, 2018, Plaintiff, through its counsel,  sent CALI a draft of this Complaint, and made demand on CALI and the individual defendants that they cease their wrongful conduct, and that the individual defendants disgorges their ill-gotten gains.  *See, e.g.,* Letter from Jason Kerr to Jonathan Barron and Lisi Group, dated March 20, 2018, along with a copy of the prior draft of the Complaint, a copy of which is attached hereto as **Exhibit 1**.

69.     On March 30, 2018, CALI's counsel sent a letter inviting representative of Plaintiff to meet with CALI's CEO, Ton Shiping, in China.  However, CALI did not offer to cease its wrongful conduct.  *See, e.g.,* Letter from Jonathan Barron to Jason Kerr dated March 30, 2018, a copy of which is attached hereto as **Exhibit 2**.

70.     On March 31, 2018, Plaintiff responded to Mr. Barron's letter by declining to meet with CALI in China, but offering to meet with CALI in the State of Nevada where CALI is incorporated or, in Moscow, Russia or via teleconference.  Plaintiff also noted that Mr. Barron's letter did not address whether CALI was willing to take any action to address the wrongful conduct at issue in this matter, and indicated that Plaintiff would proceed with filing suit if CALI did not

confirm a date, location and time for the proposed meeting to occur. *See, e.g.,* Email string attached

hereto as **Exhibit 3**.

71. Shortly thereafter, CALI's counsel sent Plaintiff's counsel an email stating simply: "We will pass your response on to our client and get back to you." *Id.*

72. As of the filing of this Complaint, neither CALI nor any of the individual defendants have provided any substantive response to the demands that they cease their wrongful conduct. Nor have they indicated any willingness to cease their wrongful conduct.

73. On April 2, 2018, CALI filed with the United States Securities and Exchange Commission a Form 12b-25 Notification of Late Filing, indicating that CALI would not be able to timely file its Annual Report on Form 10-K for the period ended December 31, 2017. CALI stated in its April 2, 2018, Form 12b-25 filing that it could not timely file its Form 10-K because:

> …extra time is needed to identify certain related party transactions and the impact of such transactions for the preparation of the financial statements for the Form 10-K.

> The Registrant identified a material weakness in internal controls and procedures over identifying and reporting certain relationships and related transactions. This material weakness in the control environment contributed to delays in compiling the information for the preparation of the financial statements and disclosure involving related transactions for the Form 10-K which could not be eliminated without unreasonable effort or expense.

> The Registrant has determined that the identified material weakness would impact its disclosures in the financial statements and Form 10-K but expects to correct this material weakness by implementing additional procedures in the first half of 2018. The Registrant is working diligently with its auditors to complete its Annual Report on Form 10-K and expects to file its Form 10-K no later than fifteen days following its prescribed due date.

*See, e.g.,* Form 12b-25 dated April 2, 2018, a copy of which is attached hereto as **Exhibit 4**.

74. On April 4, 2018, CALI's COO, Jin Yang, finally responded to the Plaintiffs' March 31 offer to schedule have a conference call by stating that the company's CEO would be willing to have a teleconference, but again did not indicate that the Defendants would take any remedial action

or respond to Plaintiff's demands.   The Plaintiffs informed the Jin Yang that the telephone conference would need to occur on or before 10 AM Pacific Standard time or the Plaintiffs would file this complaint.   Jin Yang responded that the company's CEO, Tong Shiping would not be available until after April 10 as it is a "Holiday" in China.

75.   On April 6, 2018, counsel for CALI informed Plaintiffs' counsel that CALI's audit committee had retained the law firm of DLA Piper to investigate the Plaintiffs' allegations, but again did not agree to comply with Plaintiffs' demands.   In response to CALI's counsel's email, Plaintiffs' counsel sent the following email on April 6, 2018:

Rob,

The audit committee's decision to engage a law firm to investigate the fraud is a step that should have been taken years ago. Your client's audit committee and auditor should have been aware of the issues raised in our complaint since at least 2016. The facts in our complaint all come from publicly available documents found on the internet, of which your client's audit committee and auditor could have found.   In addition, my client disclosed the basic facts outlined in the complaint to the company last year. My client even emailed the head of the company's audit committee directly, outlining the facts, but his email was ignored.   Given the fact that the audit committee and auditors had constructive knowledge of the fraud since at least 2016 and actual knowledge since late 2017, hiring a firm on April 6, 2018 (after being given a copy of the complaint on March 20, 2018)  to "investigate" the fraud seems to be another attempt to delay.   An "investigation" at this point is not taking concrete steps to address the issues raised in our complaint, which should have been investigated, addressed and resolved years ago.

Despite dozens of phone calls and emails your client has refused to even discuss the matter directly with my client.  Even after being put on formal notice that my client intended to file suit nearly three weeks ago, your client's CEO has avoided getting on the phone with my client, using the excuse of a "Holiday".

My client wants to resolve this matter without litigation.  But at this point, hiring a firm to "investigate" the complaint, appears to be nothing more than another delay tactic.  Consequently, and as promised, we will hold off fling the complaint until 10 am Pacific time.  After 10 am we will file the complaint.  As part of the relief we will seek a prejudgment writ of attachment to seize the LISI stock held by CALI's CEO and his wife.

/ / /

Please let me know if your client wants to talk.

Thanks

Jason

76.     Neither CALI nor its counsel responded to the above email by the time this Complaint was filed and no teleconference has to date taken place.

## FIRST CAUSE OF ACTION

### (Against Individual Defendants for Breach of Fiduciary Duty)

77.     Plaintiffs repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

78.     Each individual defendant owed to the Company the duty to exercise candor, good faith and loyalty in the management and administration of CALI's business and affairs, particularly in foreign countries with less developed legal and regulating frameworks.

79.     The individual defendants' conduct set forth herein was not due to an honest error or misjudgment, but rather to their intentional breach or reckless disregard of the fiduciary duties they owed to the Company, as alleged herein. The individual defendants intentionally breached or recklessly disregarded their fiduciary duties to protect the rights and interests of CALI.

80.     In breach of their fiduciary duties owed to CALI, the individual defendants willfully participated in and caused the Company to waste its valuable assets, stole and diverted corporate opportunities and profits and otherwise to expend unnecessarily its corporate funds, and failed to properly oversee CALI's businesses, rendering them personally liable to the Company for breaching their fiduciary duties.

81.     As a direct and proximate result of defendants' breaches of their fiduciary obligations, CALI has sustained, and continues to sustain, significant damages. As a result of the misconduct alleged herein, defendants are liable to the Company.

**SECOND CAUSE OF ACTION**

**(Against The Individual Defendants for Abuse of Control)**

82.　　Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

83.　　The individual defendants' misconduct alleged herein constituted an abuse of their ability to control and influence CALI, for which they are legally responsible.

84.　　As a direct and proximate result of defendants' abuse of control, CALI has sustained significant damages.

85.　　As a direct and proximate result of defendants' breaches of their fiduciary obligations of candor, good faith and loyalty, CALI has sustained and continues to sustain significant damages.

86.　　As a result of the misconduct alleged herein, defendants are liable to the Company.

**THIRD CAUSE OF ACTION**

**(Against All Defendants for Waste of Corporate Assets)**

87.　　Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs though fully set forth herein.

88.　　As a result of the foregoing misconduct, defendants have caused CALI to waste valuable corporate assets.

89.　　As a direct and proximate result of defendants' breaches of their fiduciary obligations of candor, good faith and loyalty, CALI has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, defendants are liable to the Company.

**FOURTH CAUSE OF ACTION**

**(Against All Defendants for Conspiracy)**

90.　　Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

91.     Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming plaintiffs; and as a direct and proximate result of the defendants' actions, CALI sustained damages resulting from defendants' acts.

### FIFTH CAUSE OF ACTION

### (Against All Defendants for Unjust Enrichment)

92.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

93.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense and detriment of CALI and its shareholders.

94.     Plaintiffs, as a shareholder and representative of CALI, seeks restitution from Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by the defendants, and each of them, as a result of their wrongful conduct and breach of fiduciary duties.

### SIXTH CAUSE OF ACTION

### (Injunctive Relief)

95.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

96.     The existing and threatened injuries to CALI as a result of defendants' conduct set forth above outweighs whatever damage a restraining order and/or injunction would cause CALI or any of the individual defendants.

97.     A restraining order and/or injunction would not be adverse to the public interest.

98.     There is a substantial likelihood that plaintiff will prevail on the merits, and plaintiff has no adequate remedy at law and/or will suffer and is suffering irreparable harm.

99.     Accordingly, plaintiff requests an injunction prescribing, without limitation, the following relief:

(a)     enjoining defendants and anyone acting on their behalf or in conjunction with them from selling, transferring or otherwise disposing of any of his, her, or its ownership interest in CALI;

(b)  enjoining defendants and anyone acting on their behalf or in conjunction with them from selling, transferring or otherwise disposing of any of his, her, or its ownership interest in LISI;

(c)  sequestering and seizing the proceeds of the sale of shares of LISI made by Cheng Weihong and others acting on their behalf in or about February 2018, which netted approximately $41,000,000.

(d)     enjoining CALI and anyone acting on its behalf or in conjunction with it from selling, transferring or otherwise disposing of any of its assets, and enjoining each and every one of the individual defendants from causing CALI to sell, transfer or otherwise dispose of its assets; and

(e)     ordering CALI  and anyone acting on its behalf or in conjunction with it to immediately terminate any contractual relationships related to the above allegations.

(f)     ordering CALI to reform and improve its corporate governance to bring its corporate governance into legal, accepted and standard practice for an American publicly traded company.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment in its favor against all defendants as follows:

A.     Declaring that plaintiff may maintain this action on behalf of CALI and that plaintiff is an adequate representative of CALI;

B.     Declaring that the defendants have breached and/or aided and abetted the breach of their fiduciary duties to CALI;

C.      Determining and awarding to CALI the damages sustained by it as a result of the violations set forth above from each of the defendants, jointly and severally, together with interest thereon;

D.      Determining and awarding to CALI exemplary damages in an amount necessary to punish defendants and to make an example of defendants to the community according to proof at trial;

E.      Awarding CALI restitution from defendants, and each of them;

F.      Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs and expenses;

G.      For a preliminary and permanent injunction as set forth above; and

H.      Granting such other and further equitable relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IX.

### JURY DEMAND

Plaintiffs demand a trial by jury.

DATED this 6th day of April, 2018.

**ALDRICH LAW FIRM, LTD.**

/s/ John P. Aldrich
John P. Aldrich, Esq.
Nevada Bar No. 6877
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
Tel:  (702) 853-5490
Fax:  (702) 227-1975

Jason M. Kerr (NSB 7773)
Ronald F. Price (Utah Bar No. 5535)
*Pro Hac Vice to be submitted*
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive
Salt Lake City, UT 84116
Telephone:  (801) 530-2900

*Attorneys for Plaintiff*

**<u>VERIFICATION</u>**

I, EGOR ROMANYUK, on behalf of BARNA CAPITAL GROUP LTD, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct to the best of my knowledge.

DATED this 6th day of April, 2018.

/s/ Egor Romanyuk_____
Egor Romanyuk

- 29 -

# EXHIBIT 1

# EXHIBIT 1



**PPK** | PRICE
PARKINSON
& KERR, PLLC

5742 W. HAROLD GATTY DR | SUITE 101 | SALT LAKE CITY, UT | PHONE 801.530.2900

March 20, 2018

(VIA EMAIL)

Jonathan M. Barron
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030
E-mail: jonathan.barron@klgates.com

Lisi Group
Attention: Li Xin Li
info@lisigroup.com.hk

Re: Barna Capital Group, Ltd v. Tong Shiping, et al. (Shareholder Derivative Action)

Dear Mr. Barron:

As you know, this law firm represents Barna Capital Group, Ltd. ("Barna"). As set forth in the attached draft Complaint, Barna capital believes the officers and directors (the "Individuals") of China Auto Logistics, Inc. ("CALI") have been and are violating their fiduciary duties to CALI, have been wasting corporate assets, and have been unjustly enriched as a result of their wrongdoings and various breaches of duties. Accordingly, as the owner of more than twenty percent (20%) of the outstanding common stock of CALI, Barna hereby demands that CALI immediately cease the wrongful conduct that is alleged in the Complaint, that the Individuals immediately cease wasting and usurping corporate assets, that the Individuals immediately provide CALI with an accounting of any and all monies or other assets they have received as a result of their various breaches, and that they immediately pay back to CALI all of their ill-gotten gains.

Please be aware that Barna intends to file that attached Complaint no later than March 31, 2018, in the event CALI and the Individuals fail to take the necessary corrective actions. As you will see when you review the compliant, among other remedies, we will seek a temporary restraining order and preliminary injunction, which, among other things, will restrain the sale of an LISI shares by the Individuals or any entity owned or controlled by them, or any trust that benefits them. And we will seek sequestration and seizure of the approximately $41,000,000 some of the defendants wrongfully benefited from as a result of the sale of LISI stock in February 2018.

Please contact me immediately if your client desires to attempt to resolve this matter without the necessity of litigation.

Sincerely,

PRICE PARKINSON & KERR, PLLC

Jason M. Kerr

cc:  Egor Romanyuk

Jason M. Kerr (NSB 7773)
Ronald F. Price (Utah Bar No. 5535)
*Pro Hac Vice Pending*
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive
Salt Lake City, UT 84116
Telephone:  (801) 530-2900
Email: jasonkerr@ppktrial.com
         ronprice@ppktrial.com
         Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **BARNA CAPITAL GROUP LTD,** a Cyprus Entity; derivatively on behalf of **CHINA AUTO LOGISTICS, INC.** a Nevada Corporation | **COMPLAINT** |
| Plaintiff, | **Case No.** |
| v. | **Judge:** |
| **TONG SHIPING,** an Individual; **CHENG WEIHONG**, an Individual; **HOWARD BARTH**, an Individual; **MENG DONG**, an Individual; **LV FUQUI,** an Individual; **YU JUN,** an Individual; **BAI SHAOHUA,** an Individual; **XINWEI WANG,** an Individual; **LILI YANG,** an Individual; **LISI GROUP (HOLIDNGS) LTD**, a Bermuda Limited Liability Company; **MEGA CONVENTION GROUP LIMITED**, a British Virgin Islands Limited Liability Company; **TIANJIN BINHAI CAR CITY, LTD.** a company established in the Peoples Republic of China; **MIGHTY MARK INVESTMENTS**, a British Virgin Islands Corporation; **TIANJIN CALISTAR AUTOMALL OPERATION** | |

| | |
|---|---|
| **MANAGEMENT CO., LTD.** A limited company established in the Peoples Republic of China **CALISTAR AUTOMOBILE SALES AND SERVICES, LTD.** A limited company established in the Peoples Republic of China; **TIANJIN CALISTAR INDUSTRIAL COMPANY, LTD.,** a limited company established in the Peoples Republic of China; **WORLD VAST INTERNATIONAL ENTERPRISE LIMITED,** a Hong Kong Limited Liability Company; **TIANJIN BOHAI CAR SUPPLY CHAIN MANAGEMENT CO. LTD.,** a limited company established in the Peoples Republic of China; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| And | ) ) |
| **CHINA AUTO LOGISTICS INC.,** a Nevada Corporation, nominal Defendant. | ) ) ) |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff **BARNA CAPITAL GROUP LTD,** a Cyprus company, by its attorneys, submit this Verified Shareholder Derivative Complaint (the "Complaint") on behalf of the nominal plaintiff **CHINA AUTO LOGISTICS, INC.,** ("CALI") a Nevada Corporation, against the defendants named herein.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the Plaintiff is a citizen of a foreign state and one of the defendants is a citizen of the State of Nevada.  The other defendants are citizens of other foreign states.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff is a citizen of Cyprus with

- 2

offices in Cyprus and Russia.  Defendants are citizens of Nevada, the British Virgin Islands, the Peoples Republic of China, Hong Kong, Canada and Bermuda.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would otherwise not have.

2.  This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1401 and 28 U.S.C. § 1391(a) because: (i) nominal party CALI is a Nevada corporation and maintains an office in this District; (ii) one or more defendants either resides in or maintains executive offices in this district; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## II. SUBSTANTIVE ALLEGATIONS

4.  This is a shareholder derivative action on behalf of nominal party CALI, a Nevada Corporation.  In its public filings with the SEC and in other public representations, CALI claims to be in the business of selling "imported automobiles . . . financing services related to imported automobiles, and . . . other services including automobile information websites and advertising services, and logistics services related to the automobile importing process and other automobile value added services, such as assistance with customs clearance, storage and nationwide delivery services" in the Peoples Republic of China.  Essentially, CALI claims to be engaged in "parallel

importation" of automobiles into China.  Sometimes this business is referred to as "gray market"
automobile importation.  CALI purports to purchase luxury automobiles in countries outside of
China, primarily in North America, and exports those automobiles to China, where it marks up
and purports to sell those automobiles to Chinese consumers.  Because of market price
differentials, luxury automobiles often sell for more than two or three times the cost to purchase
the same automobiles in North America.  CALI reports over $400,000,000.00 per year in
revenue, but with a very low profit margin.  Although CALI claimed that it earned a very small
profit in 2016, it usually has reported losses.  CALI reports an operating margin of around 0.4%,
while its competitors report operating margins of around 12%.

6.   The individual defendants are the current members of CALI's Board of Directors
("Board"), and one former member of the Board, and former CALI Vice President, Cheng
Weihong.  Ms. Weihong is the wife of the President, CEO and CALI board member Tong
Shiping.  Mr. Tong and Ms. Wiehong own, through entities they control, a majority of the shares
of CALI and control both the Board and CALI.  As will be described in greater detail below,
Cheng Weihong, for her own benefit and the benefit of her husband, Tong Shiping, and with the
acquiesce, approval and assistance of the Board, fraudulently diverted millions of dollars of
corporate opportunities and profits to the entity defendants and ultimately to Cheng Weihong and
Tong Shiping.  These corporate opportunities and profits rightfully belonged to CALI.   This
action arises from defendants' actions.

7.   While both a member of the Board and the Vice President of CALI, Cheng Weihong,
in violation of her duties and obligations, also secretly owned and operated a web of interrelated
companies that were and are "principally engaged in . . . the Parallel Import and trading of
Parallel Imported Cars" in direct competition with CALI.  Cheng Weihong's actions were taken

- 4

with the full consent and for the benefit of her husband Tong Shiping. Cheng Wiehong's

businesses include defendants Mighty Mark Investments Limited, Mega Convention Group

Limited, World Vast International Enterprise Limited, Tianjin Calistar Automall Operation

Management Co. LTD. ("Calistar Automall"), Tianjin Calistar Industrial Co. LTC, and Calistar

Automotive Sales and Services Co. LTD. These entities were also controlled by Cheng

Weihong's husband, member of the Board, and president and CEO of CALI, Tong Shiping.

These entities were created to fraudulently siphon profits from CALI to the detriment of CALI

and CALI's shareholders and for the benefit of defendants Tong Shiping and Cheng Weihong.

8.   On or about June 2, 2016, defendant Calistar Automall, which is owned and controlled

by defendant Cheng Weihong, entered into a "Strategic Cooperative Agreement" with defendant

Tianjin Binhai International Car City Co., LTD. ("Binhai Car City"). Binhai Car City is owned

and controlled by Cheng Weihong's son-in-law and nephew. Its board of directors includes

defendant Yang Lili, who also sits on the board of directors of CALI. Binhai Car City shares its

business address with CALI. According to public filings, Binhai Car City's business is renting

and providing exhibition space for parallel car importers in Tianjin, China.

9.   Despite the fact that Binhai Car City's business is exhibition space rental, Binhai Car

City "Strategic Cooperative Agreement" with Calistar Automall requires Binhai Car City to sell

parallel imported cars to Calistar Automall.

10.   However, Binhai Car City has no ability to import cars into China. Therefore it must

purchase cars from a parallel importer. Binhai Car City purchases automobiles imported by

CALI. Binhai Car City then resells the CALI automobiles to entities owned and controlled by

Cheng Weihong. Binhai Car City purchases automobiles from CALI at below market prices and

then resells those automobiles at below market prices to entities owned and controlled by Cheng

Weihong for the benefit Cheng Weihong and Tong Shiping and to the damage and detriment of CALI and its shareholders.

11.  On September 29, 2016, Binhai Car City entered into a legally binding undertaking wherein it stated "that since January 2015 it has not been and will not be, engaged in business similar to" Calistar Automall's business of "the sale and trading of Parallel Imported Cars."  In other words, Binhai Car City, as of at least January 2015, sold parallel imported vehicles only to entities owned and controlled by Cheng Weihong.

12.  The terms of the "Strategic Cooperative Agreement" are unusually favorable to Calistar Automall.  Among other things, the Strategic Cooperative Agreement requires Binhai Car City to sell automobiles to Calistar Automall at the lowest price available from third parties in the market, regardless of the price Binhai Car City paid for that automobile and regardless whether that sale would result in a loss or not to Binhai Car City.  At the same time, Calistar Automall guarantees to cover any losses to Binhai Car City as a result of a sale price that was too low to cover Binhai Car City's costs.  In other words, the Strategic Cooperative Agreement was designed so that Binhai Car City neither loses nor makes any money on the sale of automobiles to Calistar Automall because once transfer payments are taken into account Binhai Car City sells all cars to its only customer, Calistar Automall, at its cost.

13.  In summary, CALI sells automobiles to Binhai Car City at below market prices and, according to its SEC flings, at a 0.4% margin.  Binhai Car City then resells those automobiles to Calistar Automall at a prices and on terms that guarantee Binhai Car City makes no money. Calistar Automall is now free to sell the automobile at market prices, earing a high profit margin. These profits rightly belong to CALI and its shareholders, but instead are divered to Calistar Automall to benefit Tong Shiping and Cheng Weihong.  The result is that CALI has the lowest

profit margin among its competitors in the parallel importation market in China, despite the fact that, according to its CEO, Tong Shiping, CALI is by far the largest parallel importer in China with hundreds of millions of dollars in revenue and should therefore enjoy significant economies of scale and market power over its competitors.

14.   Calistar Automall began operations sometime in 2014 and grew very quickly.  In 2014 its revenues were approximately $1,000,000.  The following year, 2015, Calistar Automall reported revenues of $101,536,262.  Calister Automall was also very profitable, reporting approximately $4,900,000 in profits in 2015, the same year CALI reported a $9,500,000 loss.

15.   On September 30, 2016, within three months of entering the "Strategic Cooperative Agreement" with Binhai Car City, defendant Cheng Weihong, through defendant Mighty Mark Investments Limited, which she owned and controlled, sold all of the shares in a group of companies that includes World Vast International Enterprise Limited, Calistar Automall Operations Management Co., LTD., Tianjin Calistar Industrial Co., and Calistar Automotive Sales and Services Co. LTD. (the "Purchased Entities") to defendant LISI Group (Holdings) Limited ("LISI").  According to the purchase documents, it appears that the only significant asset of any of the Purchased Entities was the Strategic Cooperative Agreement between Calistar Automall and Binhai Car City.  But for the illegal and fraudlent agreement between CALI, Binhai Car City, and Calistar Automall, Calistar Automall would have no revenues.  In other words, but for the illegal and fraudulent scheme wherein CALI sells parallel imported automobiles to Binhai Car City at below market prices, which then sells them to Calistar Automall with zero mark-up, Calistar Automall would have no revenues, profits, or business to sell to LISI.

16. In the sales documents, the Purchased Entities and Cheng Weihong also claimed to have an agreement to purchase parallel imported automobiles from Tianjin Bohai Car Supply Chain Management Co. LTD. Upon information and belief, said company either does not exist, or is owned and controlled by individuals that are under the direction and control of Cheng Weihong, Tong Shiping, or one or more of the other defendants. Investigation has failed to reveal any company under the aforementioned name that has ever exported a vehicle from North America to China.

17. LISI purchased the shares in the Purchased Entities by payment of LISI stock to entities owned and controlled by Cheng Weihong. The LISI stock has directly benefitted Cheng Weihong and Tong Shiping. The LISI stock was to be paid out if certain revenue targets were met. The targets were met, and the value of the stock held directly and for the benefit of Cheng Weihong and Tong Shiping now exceeds $400,000,000. Entities controlled and benefitting Cheng Weihong and Tong Shiping are now the single largest shareholders of LISI and control the entity.

18. In addition to the compensation listed in paragraph 17, above, Cheng Weihong and Tong Shiping negotiated a board position for Tong Xin, defendant Tong Shiping's nephew.

19. As of September 2017, CALI continued to report lackluster sales and operating margins of approximately 0.4%. LISI on the other hand has been much more successful. Its revenues are comparable to CALI's, but LISI's operating margins are over 1,000% higher—approximately 12%. In addition, LISI reported sales of approximately $200,000,000 in its first six months after its purchase of Calistar Automall, or almost exactly the same revenue as CALI, but at much higher margins. But for the fraudulent and illegal activities of the defendants, the

operating margins and profits of LISI, which have directly benefitted the defendants, would have benefited CALI and its shareholders.

20.     Although CALI purports to be in the business of importing and selling luxury automobiles to consumers in China, in reality CALI sells few, if any, automobiles to consumers.

21.     For example, a search of the internet reveals no website or other method through which consumers in China can purchase automobiles from CALI.

22.     Additionally, on information and belief, there is no physical location in China such as a dealership, store, building or other facility located in China where consumers can go to, or though which they can, purchase automobiles.

23.     Consumers cannot purchase automobiles at CALI's offices in China.

24.     Consumers in China cannot contact CALI via telephone to purchase an automobile.

25.     Consumers in China cannot purchase automobiles from CALI via the internet.

26.     CALI's employees in its offices in China have been instructed to inform persons who call CALI's offices that they cannot answer any questions about CALI's business operations.

27.     In short, on information and belief, consumers cannot and do not purchase automobiles from CALI in China, and CALI is not in fact engage in the business of selling automobiles to consumers in China.

28.  The wrongs complained of herein began at least as early as 2014 and continue through today.  Specifically, during the calendar year 2017, CALI sold automobiles valued at more than $100,000,000 to LISI through the Purchased Entities and Binhai Car City in a scheme to defraud the shareholders of CALI and to divert profits to the defendants.  In 2018, the

- 9

fraudulent scheme has continued and CALI continues to sell automobiles to LISI at less than market value, as set forth above, which LISI then resells at market value.  The effect of these acts is to deprive CALI and its shareholders of profits, which are being realized by LISI and its shareholders including the defendants in this matter.

### III. THE PARTIES

29. Plaintiff Barna Capital Group ("Barna") was a shareholder of CALI during time of the continuing wrongs complained of herein and remains a shareholder. Plaintiff currently owns approximately 20% of the outstanding CALI shares and has continuously been a shareholder since August 7, 2017.  Plaintiff is incorporated in Cyprus and maintains offices in Cyprus and Russia.

30.  Nominal party CALI claims it is in the business of selling "imported automobiles . . . financing services related to imported automobiles, and . . . other services including automobile information websites and advertising services, and logistics services related to the automobile importing process and other automobile value added services, such as assistance with customs clearance, storage and nationwide delivery services" in the Peoples Republic of China. Essentially, CALI's business is "parallel importation" of automobiles into China.  Sometimes this business is referred to as "gray market" automobile importation.  CALI purchases luxury automobiles in countries outside of China, primarily in North America, and exports those automobiles to China, where it claims to mark up and sell those automobiles to Chinese consumers.  Because of market price differentials, luxury automobiles often sell for more than two or three times the cost to purchase the same automobiles in North America.  CALI has over $400,000,000.00 per year in revenue, but with a very low profit margin.  CALI claimed that it

earned a very small profit in 2016, and usually has reported losses.  CALI reports an operating margin of around 0.4%, while its competitors report operating margins of around 12%.

31. Defendant Tong Shiping, a resident of the Peoples Republic of China, is President, CEO and Chairman of the Board of CALI during all relevant times herein.  Tong Shiping, along with his wife Cheng Weihong, the beneficial owner of a majority of the shares of CALI and therefore controls the Board.  Tong Shiping purposefully directed CALI to enter into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Tong Shiping also knew that Binhai Car City would sell those same automobiles at below market prices to defendants Calistar Automall and later to LISI, a putative competitor of CALI.  Tong Shiping did so knowing that by entering into the aforementioned transactions, Tong Shiping was acting in his own self interest and in a manner that would benefit himself and his wife Cheng Weihong and LISI and harm the interests of CALI and CALI's shareholders.

32.  Defendant Cheng Weihong, is a resident of the Peoples Republic of China, was at all relevant times until December 20, 2017 a Vice President of CALI and a board member of CALI.  Cheng Weihong is married to Tong Shiping. Cheng Weihong, along with Tong Shiping, is the beneficial owner of a majority of the shares of CALI and therefore controls the Board.  Cheng Weihong purposefully directed CALI to enter into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Cheng Weihong also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Cheng Weihong did so knowing that by entering into the aforementioned transactions, Cheng Weihong was

acting in her own self interest and in a manner that would benefit herself and her husband and LISI and harm the interests of CALI and CALI's shareholders.

33.   Defendant Lili Yang, a resident of the Peoples Republic of China, was at all relevant a board member of CALI.  Lili Yang also is a board member of Binhai Car City.  Lili Yang purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Lili Yang also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Lili Yang did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

34.   Defendant Howard Barth, a resident of Canada, was a board member of CALI. Howard Barth purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Howard Barth also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI. Howard Barth did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

35.   Defendant Meng Dong, a resident of the Peoples Republic of China, was at all relevant times a board member of CALI.  Meng Dong purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Meng Dong also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Meng Dong did so knowing that by entering into the

aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

36.   Defendant LV Fuqui, a resident of the Peoples Republic of China, was at all relevant times a board member of CALI.  LV Fuqui purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  LV Fuqui also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  LV Fuqui did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

37.   Defendant Yu Jun, a resident of the Peoples Republic of China, was at all relevant times a board member of CALI.  Yu Jun purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Yu Jun also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Yu Jun did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

38.   Defendant Bai Shaohua, a resident of the Peoples Republic of China, was at all relevant times a board member of CALI.  Bai Shaohua purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Bai Shaohua also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI,

- 13

a putative competitor of CALI.  Bai Shaohua did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

39.  Defendant Xinwei Wang, a resident of the Peoples Republic of China, was at all relevant times a board member of CALI.  Xinwei Wang purposefully directed or acquiesced to CALI entering into contracts to sell automobiles to Binhai Car City, knowing that those contracts were unfavorable to CALI and its shareholders.  Xinwei Wang also knew that Binhai Car City would sell those same automobiles at below market prices to Calistar Automall and later to LISI, a putative competitor of CALI.  Xinwei Wang did so knowing that by entering into the aforementioned transactions, CALI was acting in the interest of LISI and harm the interests of CALI and CALI's shareholders.

40.  Defendant LISI is a Hong Kong corporation, a controlling interest of which is owned and controlled by defendants Cheng Weidong and Tong Shiping.   Defendants Cheng Weidong and Tong Shiping use LISI to divert revenues and profits from CALI to the detriment of CALI and its shareholders as set forth in greater detail above.

41.  Defendant Mega Convention Group Limited is a British Virgin Islands Limited Liability Company, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

42.  Defendant Tianjin Binhai Car City, LTD. is a company established in the Peoples Republic of China is utilized and controlled by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

43.  Defendant Tianjin Bohai Car Supply Chain Management Co. LTD., is a company established in the Peoples Republic of China is utilized and controlled by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

44.  Defendant Mighty Mark Investments is a British Virgin Islands Limited Liability Company, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

45.  Defendant Tianjin Calistar Automall Operation Management Co., LTD is a limited liability company established in the Peoples Republic of China, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

46.  Defendant Calistar Automobile Sales and Services, LTD is a limited liability company established in the Peoples Republic of China, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

47.  Defendant Tianjin Calistar Industrial Company, LTD. is a limited liability company established in the Peoples Republic of China, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

48.  Defendant World Vast International Enterprise Limited is a Hong Kong company, which is owned and controlled by Defendant LISI and which is utilized by defendants Tong Shiping and Cheng Weihong to divert profits and revenue from CALI as set forth above to the detriment of CALI and CALI's shareholders.

## IV. THE FIDUCIARY DUTIES OF CALI'S DIRECTORS AND OFFICERS

49. As directors, officers, and fiduciaries of CALI, and because of their ability to control the business and corporate affairs of CALI, the individual defendants owed fiduciary duties of trust, due care, candor, good faith and loyalty to the CALI and its shareholders. These individual defendants were required to use their utmost ability to control and manage CALI in a fair, just, honest, and equitable manner. They are prohibited from engaging in self-dealing as well as unlawful corporate conduct, such as violations of the laws, rules and regulations applicable to CALI and its business.

### Specific Audit Committee Duties

50.     In addition to their general duties, the individual defendants who serve on CALI's audit owe and owed specific duties as members of the Audit Committee.  In particular, these Audit Committee defendants were responsible for overseeing the Company's compliance with legal and regulatory requirements. The Audit Committee defendants were also required to review the adequacy of the Company's internal controls and its procedures designed to ensure compliance with laws and regulations and any special audit steps adopted in light of material control deficiencies. Finally, the Audit Committee defendants had the general duty to review with management and the independent registered public accounting firm any reports or disclosures submitted by management to the Audit Committee, including management's assessment of the effectiveness of the CALI's internal control over financial reporting.

**Control, Access, and Authority**

51.     The individual defendants, because of their positions of control and authority as officers and/or directors of CALI, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

52. Because of their advisory, executive, managerial, and directorial positions with CALI, each of the individual defendants had access to adverse, non-public information about the financial condition and operations of CALI.

53. At all times relevant hereto, each of the individual defendants and the entity defendants was the agent of each of the other individual defendants and of CALI, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

54. To discharge their duties, the officers and directors of CALI were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of CALI were required to, among other things:

(a) ensure that CALI complied with its legal obligations and requirements;

(b) conduct the affairs of CALI in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business legally possible;

(c) remain informed as to how CALI conducted its operations, and upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices; and

(d) ensure that CALI was operated in a diligent, honest, and prudent

manner in compliance with all applicable laws, rules, and regulations.

**Breach of Duties**

55. Each individual defendant, by virtue of his or her position as a officer and/or director, owed to CALI and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of CALI, as well as in the use and preservation of its property and assets.  The conduct of the individual defendants complained of herein involves a knowing and culpable violation of their obligations as officers and/or directors of CALI, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company. The conduct of the individual defendants who were also officers and/or directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised all of the Board.

56. The individual defendants breached their duties of loyalty and good faith by operating CALI without implementing and maintaining internal controls in compliance with applicable law and regulations and by failing to stop and encouraging the fraudulent and illegal contracts described herein.

**V. CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

57. In committing the wrongful acts alleged herein, the individual defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design while utilizing the entity defendants in their schemes and actions. In addition to the wrongful conduct herein alleged

as giving rise to primary liability, the individual defendants further aided and abetted and/or assisted each other in breaching their respective duties.

58. During all times relevant hereto, the individual defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal the fact that the individual defendants caused CALI and the entity defendants to systematically violate the individual defendants' duties as officers and directors to CALI; (ii) deceive the investing public, including shareholders of CALI, regarding the individual defendants' management of CALI's operations; (iii) enhance the individual defendants' executive and directorial positions at CALI and the profits, power, and prestige that the individual defendants enjoyed as a result of holding these positions and (iv) personally profited and benefitted from opportunities that rightfully belonged to CALI.  In furtherance of this plan, conspiracy, and course of conduct, the individual defendants collectively and individually took the actions set forth herein.

59. The individual defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the individual defendants committed the acts set forth herein.

60. The purpose and effect of the individual defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

61. The individual defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing CALI to purposefully or recklessly violate applicable laws.  Because the actions described herein occurred under the authority of the Board, each of

the individual defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

62. Each of the individual defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each individual defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## VI. DAMAGES

63. As a result of diverting corporate opportunity and profits from CALI to LISI as set forth above, defendants Tong Shiping and Cheng Weihong directly and personally benefitted by obtaining shares in LISI currently valued at over $400,000,000

64.  In addition, the stock price of CALI has been artificially depressed as a result of the scheme to divert profits to LISI in an amount to be proven at trial.

65.  In addition CALI has incurred costs and expenses Such expenditures include, but are not limited to expenses resulting from increased legal fees, costs incurred from the compensation and benefits paid to individual defendants who breached their fiduciary duties to the Company, damages to CALI's business, goodwill, and reputation with its business partners, and shareholders have been gravely impaired. For at least the foreseeable future, CALI will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that CALI' ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

66.     Plaintiff has made demand on CALI and the individual defendants to cease their wrongful and illegal conduct, and for the individual defendants to disgorge to CALI their ill-gotten gains.  CALI and the individual defendants have refused to cease their wrongful conduct, and the individual defendants have refused to disgorge to CALI their ill-gotten gains, which gains rightfully belong to CALI.

67.     Plaintiff has made demands on CALI that CALI allow Plaintiff to inspect, *inter alia*, CALI's (a) books of account and financial records, (b) press releases or public communications regarding any business relationship with the other corporate defendants, (c) internal communications relating to Cheng Weihong's business dealings with any of the other corporate defendants, (c) invoices to, and contracts with, defendants Tianjin Binhai Car City, Ltd., (d) all invoices to any of CALI'is customers over the past three years, (d) board actions, resolutions or minutes related to Binhai Car City and/or LISI Group (Holding) Limited, and (e) disclosures of conflicts of interests related to members of the board of directors.

68.     CALI has refused to allow Plaintiff to review the documents referenced in paragraph 68.

## FIRST CAUSE OF ACTION

### (Against Individual Defendants for Breach of Fiduciary Duty)

69.  Plaintiffs repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

70.  Each individual defendant owed to the Company the duty to exercise candor, good faith and loyalty in the management and administration of CALI's business and affairs, particularly in foreign countries with less developed legal and regulating frameworks.

71.  The individual defendants' conduct set forth herein was not due to an honest error or misjudgment, but rather to their intentional breach or reckless disregard of the fiduciary duties they owed to the Company, as alleged herein. The individual defendants intentionally breached or recklessly disregarded their fiduciary duties to protect the rights and interests of CALI.

72.  In breach of their fiduciary duties owed to CALI, the individual defendants willfully participated in and caused the Company to waste its valuable assets, stole and diverted corporate opportunities and profits and otherwise to expend unnecessarily its corporate funds, and failed to properly oversee CALI's businesses, rendering them personally liable to the Company for breaching their fiduciary duties.

73.  As a direct and proximate result of defendants' breaches of their fiduciary obligations, CALI has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, defendants are liable to the Company.

## SECOND CAUSE OF ACTION

### (Against The Individual Defendants for Abuse of Control)

74.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

75. The individual defendants' misconduct alleged herein constituted an abuse of their ability to control and influence CALI, for which they are legally responsible.

76.  As a direct and proximate result of defendants' abuse of control, CALI has sustained significant damages.

77.  As a direct and proximate result of defendants' breaches of their fiduciary obligations of candor, good faith and loyalty, CALI has sustained and continues to sustain significant damages.

- 22

78.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## THIRD CAUSE OF ACTION

### (Against All Defendants for Waste of Corporate Assets)

79.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs though fully set forth herein.

80. As a result of the foregoing misconduct, defendants have caused CALI to waste valuable corporate assets.

81.  As a direct and proximate result of defendants' breaches of their fiduciary obligations of candor, good faith and loyalty, CALI has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## FOURTH CAUSE OF ACTION

### (Against All Defendants for Conspiracy)

82.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

83.  Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming plaintiffs; and as a direct and proximate result of the defendants' actions, CALI sustained damages resulting from defendants' acts.

## FIFTH CAUSE OF ACTION

### (Against All Defendants for Unjust Enrichment)

84.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

85.  By their wrongful acts and omissions, defendants were unjustly enriched at the expense and detriment of CALI and its shareholders.

86. Plaintiffs, as a shareholder and representative of CALI, seeks restitution from Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by the defendants, and each of them, as a result of their wrongful conduct and breach of fiduciary duties.

## SIXTH CAUSE OF ACTION

### (Injunctive Relief)

87. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

88. The existing and threatened injuries to CALI as a result of defendants' conduct set forth above outweighs whatever damage a restraining order and/or injunction would cause CALI or any of the individual defendants.

89. A restraining order and/or injunction would not be adverse to the public interest.

90. There is a substantial likelihood that plaintiff will prevail on the merits.

91. Accordingly, plaintiff requests an injunction prescribing, without limitation, the following relief:

(a)    enjoining defendants and anyone acting on their behalf or in conjunction with them from selling, transferring or otherwise disposing of any of her ownership interest in CALI;

(b)  enjoining defendants and anyone acting on their behalf or in conjunction with them from selling, transferring or otherwise disposing of any of her ownership interest in LISI;

(c)  sequestering and seizing the proceeds of the sale of shares of LISI made by Cheng Weihong and others acting on their behalf in or about February 2018, which netted approximately $41,000,000.

- 24

(d)     enjoining CALI and anyone acting on its behalf or in conjunction with it from selling, transferring or otherwise disposing of any it its assets, and enjoining each and everyone of the individual defendants from causing CALI to sell, transfer or otherwise dispose of its assets; and

(e)     ordering CALI  and anyone acting on its behalf or in conjunction with it to immediately terminate any contractual relationships related to the above allegations.

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment in its favor against all defendants as follows:

A. Declaring that plaintiff may maintain this action on behalf of CALI and that plaintiff is an adequate representative of CALI;;

B. Declaring that the defendants have breached and/or aided and abetted the breach of their fiduciary duties to CALI;

C. Determining and awarding to CALI the damages sustained by it as a result of the violations set forth above from each of the defendants, jointly and severally, together with interest thereon;

D. Determining and awarding to CALI exemplary damages in an amount necessary to punish defendants and to make an example of defendants to the community according to proof at trial;

E. Awarding CALI restitution from defendants, and each of them;

F. Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs and expenses;

G.      For a preliminary and permanent injunction as set forth above; and

H. Granting such other and further equitable relief as this Court may deem just and proper.

## IX.   JURY DEMAND

Plaintiffs demand a trial by jury.

DATE: March _____, 2018.

PRICE PARKINSON & KERR, PLLC

_____

Jason M. Kerr
Attorneys for Plaintiff

# EXHIBIT 2

# EXHIBIT 2

# K&L GATES

March 30, 2018

Jonathan M Barron
jonathan.barron@klgates.com

T +1 212 536 3915
F +1 212 536 3901

Jason M. Kerr
Price Parkinson & Kerr, PLLC
5742 W. Harold Gatty Dr. Suite 101
Salt Lake City, UT 84116

Dear Mr. Kerr,

On behalf of China Auto Logistics Inc. (the "Company"), I have been asked to extend an invitation for a representative of Barna Capital Groups LTD ("Barna") to meet with the Company's CEO, Mr. Tong Shiping, in Tianjin, China to discuss Barna's questions about the Company. Please forward this invitation to Barna and let me know if a meeting can be arranged.

Very truly yours,

*J. Barron /M.Z.*

Jonathan M Barron

K&L GATES LLP
599 LEXINGTON AVENUE   NEW YORK  NY 10022-6030
T +1 212 536 3900  F +1 212 536 3901  klgates.com

# EXHIBIT 3

# EXHIBIT 3

**Ron Price PPK**

| | |
|---|---|
| **From:** | Matlin, Robert S. <Robert.Matlin@klgates.com> |
| **Sent:** | Saturday, March 31, 2018 6:36 AM |
| **To:** | Jason Kerr PPK |
| **Cc:** | Barron, Jonathan M.; Ron Price PPK |
| **Subject:** | Re: Letter Re: Barna Capital Group, Ltd v. Tong Shipping et al. |

Mr Kerr
We will pass your response on to our client and get back to you.

K&L Gates LLP

Rob
Robert S. Matlin, Esq.
Partner
Direct : 212.536.4066
Mobile: 516.353.9313
599 Lexington Avenue
New York , NY 10022
General: 212.536.3900
Fax: 212.536.3901
robert.matlin@klgates.com

On Mar 31, 2018, at 7:26 AM, Jason Kerr PPK <jasonkerr@ppktrial.com> wrote:

> Mr. Barron,
>
> Thank you for your letter.  My client has been attempting to communicate with Mr. Shiping or another company executive for many months.  It has been a mystery to us why your client has until now refused to speak, respond to emails, or otherwise communicate with Barna Capital, who, as you know, is a major company shareholder.  So my client welcomes the opportunity for a dialogue.
>
> However, my client's representatives are not willing to travel to China for the meeting.  CALI is an American company, incorporated in Nevada, so, we believe that Nevada is the proper place for the meeting.  Alternatively, my client is willing to meet in Moscow on April 8, or schedule a conference call.
>
> Your letter fails directly to address whether your clients are willing to take any action related to the misfeasance and malfeasance outlined in the complaint and demand letter that we sent you on Tuesday, March 20, 2018.  Unless we have confirmed a time, date and location of a meeting by March 31, 2018, 5 PM Pacific Daylight Time, we will assume that your client intends to take no action to address the issues raised in our letter.
>
> Sincerely,
>
> Jason Kerr

**From:** Barron, Jonathan M. <jonathan.barron@klgates.com>
**Sent:** Friday, March 30, 2018 10:51 AM
**To:** Jason Kerr PPK
**Cc:** Matlin, Robert S.
**Subject:** RE: Letter Re: Barna Capital Group, Ltd v. Tong Shipping et al.

Please see attached for a letter on behalf of China Auto Logistics.

Regards,
Jon

---

**From:** Barron, Jonathan M.
**Sent:** Thursday, March 22, 2018 6:16 PM
**To:** 'Jason Kerr PPK'
**Cc:** Robert S. Matlin (Robert.Matlin@klgates.com)
**Subject:** RE: Letter Re: Barna Capital Group, Ltd v. Tong Shipping et al.

I can confirm receipt.  We have forwarded your letter on to the company.

Regards,
Jon

---

**From:** Jason Kerr PPK [mailto:jasonkerr@ppktrial.com]
**Sent:** Thursday, March 22, 2018 5:44 PM
**To:** Angela Johnson; Barron, Jonathan M.
**Cc:** info@lisigroup.com.hk; Ron Price PPK; Elizabeth Phelps-Robbins PPK
**Subject:** RE: Letter Re: Barna Capital Group, Ltd v. Tong Shipping et al.

Mr. Barron,

Please confirm you receipt of the attached email.

Thank you.

Jason Kerr

---

**From:** Angela Johnson
**Sent:** Tuesday, March 20, 2018 1:52 PM
**To:** jonathan.barron@klgates.com
**Cc:** info@lisigroup.com.hk; Jason Kerr PPK <jasonkerr@ppktrial.com>; Ron Price PPK <ronprice@ppktrial.com>; Elizabeth Phelps-Robbins PPK <Elizabeth.Phelps-Robbins@ppktrial.com>
**Subject:** Letter Re: Barna Capital Group, Ltd v. Tong Shipping et al.

Mr. Barron,

Please see attached letter from Jason Kerr.


**Angela Johnson**
Paralegal
Price Parkinson & Kerr, PLLC

5742 West Harold Gatty Drive, Suite 101
Salt Lake City, UT  84116

Office (801) 530-2995 Fax (801) 530-2932 Cell (801) 201-7871
Email angelajohnson@ppktrial.com

The contents of this transmission may contain information that is proprietary, privileged, confidential, or otherwise is legally exempt from disclosure. This e-mail solely is intended for the use of the recipient(s) identified above. If you are not an intended recipient, you may not review, disseminate, distribute or duplicate this e-mail or any attachment. If you are not an intended recipient, please contact the sender by reply e-mail and delete this message. No employee or agent is authorized to conclude any binding agreement on behalf of any entity sending or referred-to in this e-mail without express written confirmation by senior management. Although the sender has taken reasonable precautions to ensure no viruses are present in this e-mail, the sender and any entity referred-to in this e-mail cannot accept responsibility for any loss or damage arising from the use of this e-mail or attachments (if any).

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at jonathan.barron@klgates.com.

***EXTERNAL WARNING - This email originated from an external source***

The contents of this transmission may contain information that is proprietary, privileged, confidential, or otherwise is legally exempt from disclosure. This e-mail solely is intended for the use of the recipient(s) identified above. If you are not an intended recipient, you may not review, disseminate, distribute or duplicate this e-mail or any attachment. If you are not an intended recipient, please contact the sender by reply e-mail and delete this message. No employee or agent is authorized to conclude any binding agreement on behalf of any entity sending or referred-to in this e-mail without express written confirmation by senior management. Although the sender has taken reasonable precautions to ensure no viruses are present in this e-mail, the sender and any entity referred-to in this e-mail cannot accept responsibility for any loss or damage arising from the use of this e-mail or attachments (if any).

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Robert.Matlin@klgates.com.

***EXTERNAL WARNING - This email originated from an external source***

# EXHIBIT 4

# EXHIBIT 4

NT 10-K 1 extf10k2017_chinaautolog.htm NOTIFICATION OF LATE FILING

| SEC FILE NUMBER |
| --- |
| **001-34393** |
| CUSIP NUMBER |
| **16936J 202** |

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 12b-25**

**NOTIFICATION OF LATE FILING**

*(Check one):*  ☒ Form 10-K ☐ Form 20-F ☐ Form 11-K ☐ Form 10-Q ☐ Form 10-D ☐ Form N-SAR ☐ Form N-CSR

For Period Ended: December 31, 2017

☐ Transition Report on Form 10-K

☐ Transition Report on Form 20-F

☐ Transition Report on Form 11-K

☐ Transition Report on Form 10-Q

☐ Transition Report on Form N-SAR

For the Transition Period Ended: _____

**Nothing in this form shall be construed to imply that the Commission has verified any information contained herein.**

If the notification relates to a portion of the filing checked above, identify the Item(s) to which the notification relates:

**PART I — REGISTRANT INFORMATION**

**China Auto Logistics Inc.**
Full Name of Registrant

Former Name if Applicable

**Floor 1 FTZ International Auto Mall, 86 Tianbao Avenue, Free Trade Zone**
Address of Principal Executive Office *(Street and Number)*

**Tianjin Province, The People's Republic of China 300461**
City, State and Zip Code

## PART II — RULES 12b-25(b) AND (c)

If the subject report could not be filed without unreasonable effort or expense and the registrant seeks relief pursuant to Rule 12b-25(b), the following should be completed. (Check box if appropriate)

(a) The reasons described in reasonable detail in Part III of this form could not be eliminated without unreasonable effort or expense;

☒ (b) The subject annual report, semi-annual report, transition report on Form 10-K, Form 20-F, 11-K, Form N-SAR, or N-CSR, or portion thereof, will be filed on or before the fifteenth calendar day following the prescribed due date; or the subject quarterly report of transition report on Form 10-Q, or subject distribution report on Form 10-D, or portion thereof, will be filed on or before the fifth calendar day following the prescribed date; and

(c) The accountant's statement or other exhibit required by Rule 12b-25(c) has been attached if applicable.

## PART III — NARRATIVE

State below in reasonable detail the reasons why Forms 10-K, 20-F, 11-K, 10-Q, 10-D, N-SAR, N-CSR, or the transition report portion thereof, could not be filed within the prescribed time period.

The Registrant is unable to file its Annual Report on Form 10-K for the period ended December 31, 2017 within the prescribed time period without unreasonable effort and expense because extra time is needed to identify certain related party transactions and the impact of such transactions for the preparation of the financial statements for the Form 10-K.

The Registrant identified a material weakness in internal controls and procedures over identifying and reporting certain relationships and related transactions. This material weakness in the control environment contributed to delays in compiling the information for the preparation of the financial statements and disclosure involving related transactions for the Form 10-K which could not be eliminated without unreasonable effort or expense.

The Registrant has determined that the identified material weakness would impact its disclosures in the financial statements and Form 10-K but expects to correct this material weakness by implementing additional procedures in the first half of 2018. The Registrant is working diligently with its auditors to complete its Annual Report on Form 10-K and expects to file its Form 10-K no later than fifteen days following its prescribed due date.

## PART IV — OTHER INFORMATION

(1)  Name and telephone number of person to contact in regard to this notification

| Tong Shiping | (86-22) | 2576-2771 |
|---|---|---|
| (Name) | (Area Code) | (Telephone Number) |

(2)  Have all other periodic reports required under Section 13 or 15(d) of the Securities Exchange Act of 1934 or Section 30 of the Investment Company Act of 1940 during the preceding 12 months or for such shorter period that the registrant was required to file such report(s) been filed? If answer is no, identify report(s).

Yes ☒    No ☐

(3)  Is it anticipated that any significant change in results of operations from the corresponding period for the last fiscal year will be reflected by the earnings statements to be included in the subject report or portion thereof?

Yes ☒    No ☐

If so, attach an explanation of the anticipated change, both narratively and quantitatively, and, if appropriate, state the reasons why a reasonable estimate of the results cannot be made.

2

**China Auto Logistics Inc.**
(Name of Registrant as Specified in Charter)

has caused this notification to be signed on its behalf by the undersigned hereunto duly authorized.

Date: April 2, 2018

By: /s/ Tong Shiping

Name: Tong Shiping

Title: Chief Executive Officer

INSTRUCTION: The form may be signed by an executive officer of the registrant or by any other duly authorized representative. The name and title of the person signing the form shall be typed or printed beneath the signature. If the statement is signed on behalf of the registrant by an authorized representative (other than an executive officer), evidence of the representative's authority to sign on behalf of the registrant shall be filed with the form.

**ATTENTION**

**Intentional misstatements or omissions of fact constitute Federal Criminal Violations (See 18 U.S.C. 1001)**

3

**Exhibit to 12b-25**

The Registrant expects revenue from continuing operations for the year ended December 31, 2017 to increase approximately 4% from the year ended December 31, 2016 and the net loss from continuing operations for the year ended December 31, 2017 to increase 49% from the year ended December 31, 2016. The expected increase in net loss for the year ended December 31, 2017 resulted from a decline in gross margin in the sales of automobiles, the decline in the revenue generated from Financing Services and a moderate increase in the Registrant's operating expenses.

The financial information presented above is preliminary, based upon the Registrant's internal estimates and subject to the Registrant's ongoing assessment of revenue recognition, the Audit Committee's independent review of this matter, and completion of the Registrant's financial closing procedures and issuance of its financial statements as of and for the year ended December 31, 2017. The Registrant's final financial results and other financial data could differ materially from this preliminary financial information. The Registrant's final financial results will be set forth in the Registrant's Form 10-K as of and for the year ended December 31, 2017.

4