UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BARNA CAPITAL GROUP LTD., Plaintiff(s), v. TONG SHIPPING, et al., Defendant(s). | Case No. 2:19-CV-169 JCM (PAL) ORDER |

Presently before the court is plaintiff Barna Capital Group Ltd.'s ("Barna") motion to remand. (ECF No. 15). Defendants Tong Shiping, Cheng Weihong, Meng Dong, Lv Fuqui, Yu Jun, Bai Shaohua, Xinwei Wang, and Lili Yang (collectively "individual defendants") filed a response (ECF No. 17), to which Barna replied (ECF No. 19).

**I. Facts**

This is a shareholder derivative action in which Barna, a Cyprus corporation with offices in the Republic of Cyprus and the Russian Federation, is suing on behalf of CALI, a Nevada corporation. (ECF Nos. 1-3, 17). The complaint contains the following allegations:

CALI is in the business of selling imported luxury vehicles in the People's Republic of China ("China") and provides services related to automobile importation. (ECF No. 1-3). CALI's business model consists of purchasing luxury automobiles primarily in North America and selling them in China for more than two or three times the purchase price. *Id.* CALI reports over $400,000,000 per year in revenue and a profit margin of around 0.4%. *Id.* CALI's profit margin is low in comparison to its competitors, which report profit margins around 12%. *Id.*

Barna has been a minority shareholder of CALI at all times relevant to this litigation and currently holds 20% of the outstanding CALI shares. *Id.* Defendant Shiping and his wife,

defendant Weihong, own through various business entities a majority of CALI's shares. *Id*. Shiping is also the president, chief executive officer, and a board member of CALI. *Id*. Weihong is a former board member and former vice-president of CALI. *Id*. Shiping and Weihong effectively control CALI. *Id*.

When Weihong was a board member and vice-president of CALI, she and her husband secretly owned and operated a web of interrelated companies that sold imported vehicles in China. *Id*. These companies included defendant Calistar Automall Sales and Services, Ltd. ("Calistar"), which Weihong owned. *Id*. Weihong's son-in-law and nephew owned and operated Tianjin Binhai International Car City Co., Ltd. ("Tianjin"), which is another company involved in selling imported vehicles. *Id*. One of CALI's board members, defendant Yang Lili, was also on Tianjin's board of directors. *Id*.

On or about June 2, 2016, Calistar entered into a Strategic Cooperative Agreement ("the agreement") with Tianjin. *Id*. In accordance with the agreement, Tianjin would purchase vehicles below market price from CALI and sell those vehicles to Calistar at cost. *Id*. This arrangement ensured that Tianjin would not make any money. *Id*. Calistar would later sell those cars at market prices, earning a high profit margin. *Id*. In effect, profits that originally belonged to CALI and its shareholders were diverted to Calistar, Shiping, and Weihong. *Id*.

On September 30, 2016, Weihong, through her business entity defendant Mighty Mark Investments Limited ("Mighty Mark"), sold all of its shares in a group of companies, including Tianjin and Calistar, to defendant LISI Group (Holdings) Limited ("LISI"). *Id*. The only significant asset in the transaction was the agreement between Tianjin and Calistar. *Id*. LISI paid for the acquisition by issuing LISI stock to entities that Weihong owned and controlled. *Id*. The value of that stock now exceeds $400,000,000. *Id*. In addition, LISI reported sales of approximately $200,000,000 in the first six months after it purchased Calistar. *Id*.

After discovering Shiping and Weihong's scheme, Barna demanded that CALI allow Barna to inspect CALI's accounts, financial records, public communications, internal communication relating to Weihong's business dealings, invoices and contracts with Tianjin,

disclosures of conflicts of interest, and related actions by the board of directors. *Id*. CALI denied Barna's demand. *Id*.

On March 20, 2018, Barna sent CALI's counsel a draft of the complaint and demanded that CALI and the individual defendants to cease diverting CALI's profits. *Id*. Barna also demanded that the individual defendants to disgorge their ill-gotten gains. *Id*. On March 30, 2018, CALI's counsel sent a letter inviting BARNA to meet with Shiping in China but did not offer to cease diverting its profits to entities owned by Weihong. *Id*.

On March 31, Barna sent a letter to CALI's counsel in which Barna declined to meet in China but offered to meet in the State of Nevada or Moscow, Russia. *Id*. CALI's counsel thereafter sent an email to Barna stating, "We will pass your response on to our client and get back to you." *Id*. On April 4, 2018, CALI's chief operating officer, Jin Yang, contacted Barna and offered to schedule a teleconference. *Id*. Two days later, CALI's counsel informed Barna that CALI's audit committee retained the law firm DLA Piper to investigate Barna's allegations. *Id*.

On April 6, 2018, Barna initiated this lawsuit in state court, asserting six causes of action: (1) breach of fiduciary duty; (2) abuse of control; (3) waste of corporate assets; (4) conspiracy; (5) unjust enrichment; and (6) injunctive relief. *Id*. The defendants in this litigation consist of the individual defendants; CALI; LISI; Mighty Mark; Calistar; Tianjin; Mega Convention Group Limited; Tianjin Calistar Automall Operation Management Co., Ltd.; Tianjin Calistar Industrial Company, Ltd.; World Vast International Enterprise Limited; and Tianjin Bohai Car Supply Chain Management Co., Ltd. (collectively "defendants"). *Id*.

Shortly after Barna initiated this lawsuit, DLA Piper resigned and CALI stated in a public SEC filing that it did not believe that it would complete the investigation into Barna's allegations. (ECF No. 19-1). Thereafter, CALI's accounting firm resigned because CALI prevented the accounting from completing an audit of the company by refusing to provide reliable information. *Id*.

On January 28, 2019, defendants removed this action to federal court. (ECF No. 1). Now, Barna moves to remand this case back to state court. (ECF No. 15).

## II. Legal Standard

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

## III. Discussion

Barna argues that the court should remand this case to state court for lack of diversity jurisdiction. (ECF No. 15). The court agrees.

28 U.S.C. § 1332 allows federal courts to exercise diversity jurisdiction in civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the opposing parties. *See* 28 U.S.C. § 1332(a); *Matao Yokeno v Sawako Sekiguchi*, 754 F.3d 649, 652 (9th Cir. 2014) (citation omitted). Federal courts cannot exercise diversity jurisdiction upon removal "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

Although CALI, which is incorporated in the State of Nevada, is a defendant in this action, the individual defendants argue that the court has jurisdiction because CALI is a nominal defendant. (ECF No. 17). The individual defendants also argue that the court should realign CALI as a plaintiff. *Id.*

"The issue of alignment for purposes of diversity jurisdiction requires a court to look beyond the pleadings to the actual interest of the parties." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 872–73 (9th Cir. 2000). In derivative shareholder lawsuits, a corporation is often properly aligned as plaintiff because the shareholders are suing on behalf of the corporation. *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th 2008). However, when a corporation is "antagonistic" to the interest of the shareholders, the corporation is a proper defendant. *Id.* (citations omitted).

A corporation is antagonistic to shareholders when the corporation's management defends a course of conduct that the shareholders attack or is opposed to instituting the derivative litigation. *Id*. (citation omitted). For example, antagonism is evident when "the management refuses to take action to undo a business transaction or . . . so solidly approves it that any demand to rescind would be futile[.]" *Smith v. Sperling*, 354 U.S. 91, 97 (1957).

The individual defendant incorrectly contend that CALI is not antagonistic to Barna. Barna has already demanded on multiple occasions that CALI cease diverting its profits to entities that Shiping and Weihong own. (ECF No. 19-1). Not only did CALI's management refuse Barna's demand, but they also engaged in dilatory tactics by initiating an investigation into Barna's allegations on the eve of threatened litigation. *Id*. Indeed, this investigation was merely a distraction because, as the chair of the audit committee explained,

> The active noncooperation of the Company has prevented the Audit Committee and its counsel from uncovering the evidence necessary to ascertain the truth or inaccuracy of the allegations. . . . The efforts to impede our investigation have gone so far as to deny the Audit Committee's counsel permission to interview, or even communicate with, the Company's officers, employees or relevant staff or to even physically visit the office premises.

*Id*.

Moreover, at the time Barna filed its complaint, the individual defendants consisted of all eight members of CALI's board of directors as well as the company's president, vice-president, and chief executive officer. (ECF No. 1-3); *see In re Digimarc*, 549 F.3d at 1236 (holding that antagonism must exist at the time suit was filed). Thus, CALI is antagonistic to this lawsuit "because the very individuals who have a stranglehold over the corporation are the people against whom suit is sought to be brought and, therefore, in any sense that has any meaning they are the defendants for that reason[.]" *In re Digimarc*, 549 F.3d at 1235 (quotation marks and citations omitted).

In sum, CALI is a proper defendant in this litigation because it's management defended a course of action that Barna attacked and the individual defendants have a "stranglehold over the corporation[.]" *Id*. Accordingly, the court will grant Barna's motion to remand for lack of diversity jurisdiction under 18 U.S.C. § 1332 and 28 U.S.C. § 1441(b)(2). The court will also deny all other pending motions.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that CALI's motion to dismiss (ECF No. 6) be, and the same hereby is, DENIED without prejudice.

IT IS FURTHER ORDERED that the individual defendant's motion to dismiss (ECF No. 9) be, and the same hereby is, DENIED without prejudice.

IT IS FURTHER ORDERED that Barna's motion to remand (ECF No. 15) be, and the same hereby is GRANTED.

IT IS FURTHER ORDERED that Barna's motion to extend (ECF No. 18) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that the parties' joint motion to extend (ECF No. 20) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that the matter of *Barna Capital Group Ltd. v. Shiping et al.*, case number 2:19-cv-00169-JCM-PAL, be, and the same hereby is REMANDED.

The clerk shall close the case accordingly.

DATED April 1, 2019.

James C. Mahan

UNITED STATES DISTRICT JUDGE